NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOSEPH ALLAN KATZ,

                Plaintiff,

-vs-                                 **Case No. 6:12-CV-930-18KRS**

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the Complaint filed by Joseph Allan Katz seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 9, 10, and the parties' memoranda, Doc. Nos. 13, 14. This matter has been referred to the undersigned for issuance of a Report and Recommendation.

## PROCEDURAL HISTORY.

      In 2009, Katz filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act"). He alleged that he became disabled on January 4, 2009. R. 123, 127.

NOT FOR PUBLICATION

After his applications were denied initially and on reconsideration, an administrative law judge ("ALJ") held a hearing at Katz's request.  Katz, represented by an attorney, testified at the hearing.  R. 21-47.

After considering the testimony and the medical evidence presented, the ALJ determined that Katz was insured under OASDI through December 31, 2010.  R. 57.  The ALJ found that Katz had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

The ALJ concluded that Katz had lumbalgia, cervicalgia and episodes of tachycardia, which were severe impairments.  R. 57.  The ALJ found that Katz's impairments or combination of impairments did not meet or equal any listed impairment.  R. 59.  The ALJ found that Katz had an anxiety disorder that was not severe.  R. 58.

The ALJ found that Katz had the residual functional capacity ("RFC") to do the following:

> [P]erform the full range of medium work . . . .  Specifically, the claimant can sit for at least 6 hours in an 8 hour workday, can stand and/or walk for 6 hours in an 8 hour workday, and can lift and carry, and push and pull, up to 25 pounds frequently and 50 pounds occasionally.  The claimant has no postural, manipulative, environmental, communicative, visual or mental limitations.

R. 59.  In making this assessment, the ALJ gave weight to the RFC assessment prepared by a reviewing physician and to the statement by Richard Hynes, M.D., who the ALJ considered to be a treating physician, that Katz could return to work with no restrictions.  R. 61.  The ALJ did not state the weight he gave to the opinion of Mitchell Supler, M.D.

NOT FOR PUBLICATION

The ALJ concluded that Katz could return to his past relevant work as a dispatcher, assembler and janitor. Therefore, the ALJ concluded that Katz was not disabled. R. 62.

Katz sought review of the ALJ's decision by the Appeals Council. R. 11. On May 21, 2012, the Appeals Council issued a decision finding no basis to change the ALJ's decision. R. 1-3.

Katz seeks review of the Commisioner's decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Katz having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' memoranda and in the ALJ's decision. Accordingly, I will only summarize facts as necessary to address the issues raised in order to protect Katz's privacy to the extent possible.

Katz was born in 1967. R. 25. He has an associate's degree in liberal arts. *Id.* He received both short-term and long-term disability benefits from an insurance company starting in early 2009. R. 26-27.

NOT FOR PUBLICATION

Katz previously worked loading and dispatching trucks, doing electrical work wiring houses and installing electrical doors.  He also did custodial work at a school. R. 30-31.

Katz suffered several neck injuries in his previous work.  R. 32. Beginning in January 2009, he had problems with his neck and upper shoulder that made it difficult for him to move and caused headaches and face pain.  It also caused light-headedness and dizziness every day.  R. 33-34. He also had lower back pain radiating into his legs that made his left leg and foot numb.  R. 37.   He also had pain in his right shoulder and neck pain radiating into his hands that affected his ability to grip.  R. 37-38.  He treated the pain with Tylenol and Advil and laid down a lot.  R. 34. He also had instances of his heart racing, which he treated with medication.  R. 39.

Medical records show that Manohar G. Reddy, M.D., began treating Katz in 2007 for chest pain. R. 237.  On January 28, 2009, treatment notes reflect that Katz complained of his hands and feet being numb, constant headaches and ringing in his right ear.  R. 236. Dr. Reddy's assessment were degenerative disc disease of the cervical and lumbar spine.  *Id.*

Katz began treatment at Watts Family Chiropractic on January 5, 2009.  He complained of daily headaches relieved by Advil and lumbosacral pain, among other issues. R. 220.  The treating professional initially recommended that Katz avoid sitting and standing over 20 minutes, lifting 10 pounds, bending, stooping, twisting at the waist, prolonged neck flexion and reaching and lifting 10 pounds overhead.  R. 222.

Katz also sought treatment at The B.A.C.K. Center in January 2009.  R. 274. He complained of numbness into his hand, headaches, being lightheaded and having ringing in his ears, among other things.  R. 273. On January 29, 2009, Anne C. Gregg. P.A.-C and/or Mitchell Supler, M.D., examined Katz.  Katz was observed to walk with a nonantalgic gait.  A

NOT FOR PUBLICATION

little spasm and guarding was noted throughout, and a straight-leg raising test was positive on the left.  He had 5/5 strength in all extremities.  The impression was lumbalgia and cervicalgia.  R. 272.

On January 13, 2009, Katz was treated by Li Jin Voepel, M.D., for complaints of severe neck and back pain radiating to the shoulder, headaches and spasms.  R. 216.  Upon examination, Dr. Voepel observed moderate muscle spasm in the cervical area and upper trapezius muscle with limited range of the motion in the neck. Grip strength was normal. R. 216.  Dr. Voepel prescribed medication and administered a C7-T1 interlaminar epidural injection and other treatment.  R. 215, 217.

An MRI taken on January 30, 2009, showed minimal disc displacement at C3-4, C5-6 and C6-7 and very minimal disc dessication and trivial disc displacement at L3-4.  R. 224-25.

On February 18, 2009, Katz told PA Gregg and/or Dr. Supler that medication from Dr. Voepel and physical therapy were helping a bit.  An MRI showed disc bulging in the neck from C3 to C7 with no nerve impingement.  The treatment note states: "I have given him a note today keeping him out of work until May 1, so we may reassess his situation."  R. 269.

On March 25, 2009, testing showed that Katz had some mild ischemia.  R. 245.

On April 7, 2009, PA Gregg noted that Katz's incidences of headaches were decreasing.  PA Gregg referred Katz for additional physical therapy.  R. 247.

On April 29, 2009, Katz had a follow-up visit with PA Gregg.  Following physical therapy, range of motion in his neck was better. PA Gregg noted on examination that Katz still had tenderness in the cervical and lumbar regions but full range of motion, intact strength and he walked with a nonantalgic gain.  She indicated, "There will be no work until

06/01/09, until he completes therapy." R. 268. An unsigned note over the typewritten name of Richard Hynes, M.D., excused Katz from work for one hour on April 29, 2009 and indicated that his activity was not restricted. R. 267.

PA Gregg examined Katz again on June 10, 2009. Katz requested that PA Gregg complete a long-term disability form, but she indicated that she needed to confer with Dr. Supler or Dr. Voepel before completing it. She referred Katz to Dr. Supler for follow-up. R. 266.

On July 1, 2009, Loc Kim Le, M.D., prepared a physical RFC assessment after review of Katz's records. Dr. Le indicated that Katz could lift 50 pounds occasionally and 25 pounds frequently. He could sit, stand or walk about 6 hours in an 8-hour work day. R. 276. He could only occasionally stoop and crouch due to neck and back pain. R. 277.

On August 21, 2009, Katz had a left heart catheterization done at Holmes Regional Medical Center. R. 308-09. Charles Croft, M.D., noted a positive test for Prinzmetal angina. R. 309. Otherwise, the procedure was negative. R. 327.

At the ALJ's hearing, Katz testified that he could sit up to 45 minutes and stand 10 minutes before his heart rate increased and his breathing was labored. R. 35. He would walk about 4 to 5 minutes. He had pain in his back, head and chest with bending and squatting. He could lift 1 or 2 pounds but his hands were numb so he dropped things easily. R. 36. He used a walk-in shower, and his wife helped him to get dressed. R. 40.

During a typical day, Katz would lie down most of the day. R. 40-41. Katz had a driver's license without restrictions, but he did not drive because medication made him light-headed and dizzy. R. 28, 44.

NOT FOR PUBLICATION

**ANALYSIS.**

Katz asserts two interrelated assignments of error. He contends that the ALJ erred by failing to discuss and give significant weight to the opinion of Dr. Supler. He further asserts that the ALJ erred in finding that Dr. Hynes was a treating physician and misinterpreted the single record in the file bearing Dr. Hynes's name. These are the only issues I will discuss.[1]

The record is clear that Katz was treated at The B.A.C.K. Center, where Dr. Supler, Dr. Hynes and PA Gregg worked. The treatment notes from this facility reflect that Katz was primarily, if not exclusively, seen by PA Gregg. For example, On April 6, 2009, PA Gregg signed the form extending Katz's physical therapy over Dr. Supler's typed name. R. 247. On April 29, 2009, the treatment note bears the typewritten names of PA Gregg and Dr. Supler, but it is clear from the text of the note that Katz was examined only by PA Gregg. R. 268. ("I have recommended on more month of physical therapy and then he will follow up with Dr. Supler afterwards . . . ."). Thus, while Dr. Supler may have been the attending physician for PA Gregg, the treating professional appears to have been PA Gregg, not Dr. Supler or Dr. Hynes.

A physician's assistant is not considered an acceptable medical source and is, therefore, not entitled to controlling weight. *Nguyen v. Astrue*, No. 2:11-cv-0714-LSC, 2012 WL 2862601, at *3 (N.D. Fla. July 6, 2012). Because the record does not establish that Dr. Supler rendered the opinions set forth in the records from The B.A.C.K. Center, the ALJ did not err by failing to give considerable weight to those opinions as if they had been provided by a treating physician.

---

[1] The parties were advised in the scheduling order that issues not specifically raised may be considered to be waived. Doc. No. 11 at 2.

NOT FOR PUBLICATION

As for Dr. Hynes, the typewritten note bearing his name states, "Joseph Katz is currently under my medical care . . . ." R. 267. There are, however, no other records before the Court bearing Dr. Hynes's name. Further, the typewritten note is not signed by Dr. Hynes. There is, therefore, insufficient information to conclude either (1) that Dr. Hynes was actually one of Katz's treating physicians or (2) that Dr. Hynes rendered the opinion contained in the typewritten note.

The Commissioner correctly contends that the reliance on the typewritten note bearing Dr. Hynes's name is harmless because neither Dr. Hynes, Dr. Supler nor PA Gregg identified any specific work related restrictions. Further, the records reflect that PA Gregg placed Katz off work for only four months, which is less than the twelve-month period required to establish disability. Additionally, the Commissioner correctly argues that ALJ relied on other opinions in the record, including that of Dr. Le, about the functional limitations Katz would have to support his RFC finding. An ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (citing *Edwards v. Sullivan*, 939 F.2d 580, 584-85 (11th Cir. 1991)).

Ultimately, the burden of proving disability rests with the claimant. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). The limited assignments of error asserted by Katz are not availing. In this case, substantial evidence in the record, as summarized by the ALJ, supports the ALJ's determination that Katz was not disabled.

NOT FOR PUBLICATION

## RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**. It is further recommended that the Court direct the Clerk of Court to issue a judgment consistent with its final order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** this 16th day of July, 2013.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE